## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Intake Breathing Technology, LLC, | |
| Plaintiff, | C.A. No. _____ |
| v. | JURY TRIAL DEMANDED |
| Gentavia Holdings LLC, d/b/a/ Gentavia, | |
| Defendant. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Intake Breathing Technology, LLC ("Intake" or "Plaintiff"), by and through its undersigned counsel, brings this action for patent infringement under 35 U.S.C. § 271, trade dress infringement, copyright infringement, trademark infringement, and false designation of origin and unfair competition against Gentavia Holdings LLC d/b/a/ Gentavia ("Defendant"), and alleges as follows.

## NATURE OF THE ACTION

1.      This is a civil action for (i) patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. §§ 101 et seq., (ii) common law trade dress infringement, (iii) copyright infringement under 17 U.S.C. § 501, (iv) trademark infringement under 15 U.S.C. § 1114, and (v) false designation of origin and unfair competition under 15 U.S.C. § 1125. By this action, Plaintiff seeks to prevent Defendant from infringing Plaintiff's intellectual property rights, causing confusion in the marketplace, and unfairly benefiting from Plaintiff's reputation and goodwill.

2.      Plaintiff seeks (i) monetary damages and equitable relief in the form of an injunction both preliminarily and permanently enjoining Defendant from infringing Intake's U.S. Patent Nos. 10,675,174; 10,556,095; and 9,510,969 (collectively, the "Asserted Patents") and damages, expenses, and attorneys' fees arising from Defendant's willful infringement of the Asserted Patents;

1

(ii) monetary damages and equitable relief in the form of an injunction both preliminarily and permanently enjoining Defendant from using Intake's common law trade dress or registered trademarks in connection with the manufacture, distribution, advertising, promotion, offering for sale, and/or sale of Defendant's goods; and (iii) monetary damages, expenses, and attorneys' fees arising from the willful infringement by Defendant, of Plaintiff's registered copyrights on valuable photographic images, and to obtain injunctive relief against Defendant to cease and desist its infringement and to prevent it from any further unlawful copying and infringement of Intake's copyrights, including Copyright Registration Number VAu 1-542-204.

## THE PARTIES

3.      Plaintiff, Intake Breathing Technology, LLC is a California limited liability company with its principal place of business at 614 Santa Barbara Street, Ste. A, Santa Barbara, CA 93101, and is the owner of all rights asserted in this action.

4.      On information and belief, Defendant Gentavia Holdings LLC is a Wyoming limited liability company with a principal place of business at 30 N. Gould St., Ste. R, Sheridan, WY 82801 and owns and operates Gentavia.com powered through Shopify from 735/2-4 Lachlan Street, Waterloo, NSW, Australia, 2017.  A true and correct copy of Defendant's representations regarding its merchant contact information through Shopify for Gentavia.com is attached hereto as **Exhibit 1**.

5.      On information and belief, Kris Vu and Son Vu are the same individual, and Mr. Vu is the member, manager, and owner of Gentavia Holdings LLC doing business as Gentavia, including through the website Gentavia.com powered by Shopify. Mr. Vu has used the same email address—vxson151098@gmail.com—when identifying himself as both Kris Vu of Gentavia.com and as Son Vu of Gentavia Holdings LLC.

6.      In the alternative, if Gentavia.com is owned and/or operated by a separate entity called Gentavia based out of Australia, upon information and belief, Gentavia Holdings LLC manages and

controls Gentavia, and/or Gentavia Holdings LLC and Gentavia share joint ownership and jointly operate to make, sell, offer for sale, and/or import into the United States the infringing "Breathing Breeze" and "Nose Strips Patch" products (the "Accused Products")

## JURISDICTION AND VENUE

7.  This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). This action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.; the copyright laws of the United States, 17 U.S.C. §§ 101 *et seq*.; and the trademark laws of the United States, 15 U.S.C. §§ 1051 *et seq*.

8.  The Court has supplemental jurisdiction over Plaintiff's common law trade dress infringement claim pursuant to 28 U.S.C. § 1367(a).

9.  This Court has personal jurisdiction over Defendant because, among other reasons and upon information and belief, Defendant has consented to jurisdiction in the District of Delaware. *See* Ex. 1. Defendant has also committed acts of infringement in this District, including at least through providing, advertising, promoting, offering to sell, using, making, selling, and/or importing the Accused Products in or into this District. Upon information and belief, Defendant conducts substantial, systemic, and continuous business activities within this District, has purposefully availed itself of the privilege of doing business in the State of Delaware, and has purposefully directed its infringing activities at the State of Delaware.

10.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and/or 1400(b) because Defendant has consented to this venue by expressly consenting to jurisdiction in this District, and because Defendant has committed acts of infringement in this District, including the manufacture, use, sale, marketing, offer for sale, and/or importation of infringing products in or into this District and directed to customers within this District. Upon information and belief, a substantial part of the

events giving rise to Plaintiff's copyright, trade dress, trademark, false designation of origin and unfair competition, and patent claims also occurred in this District.

11.     In the alternative, if Gentavia is a separate entity from Gentavia Holdings LLC, based in Australia, venue is proper in this District because Defendant has consented to jurisdiction in this District and pursuant to 28 U.S.C. §§ 1391 because Defendant is a foreign company and may be sued in any judicial district. *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 712–713 (1972).

## FACTS AND BACKGROUND

### A.     Plaintiff's Intellectual Property Rights

12.     Plaintiff is the owner of all right, title, and interest in and to U.S. Patent Nos. 10,675,174 (the "'174 Patent"); 10,556,095 (the "'095 Patent"); and 9,510,969 (the "'969 Patent"). True and correct copies of the Asserted Patents are attached as **Exhibits 2–4**.

13.     The '174 Patent issued on June 9, 2020. *See* Ex. 2.

14.     The '095 Patent issued on February 11, 2020. *See* Ex. 3.

15.     The '969 Patent issued on December 6, 2016. *See* Ex. 4.

16.     The Asserted Patents were and are valid and enforceable at all times relevant to this action and are entitled to a presumption of validity under 35. U.S.C. § 282.

17.     The '174 Patent is directed to a breathing system adapted to open a nasal passage. A representative picture of Plaintiff's magnetic nasal dilator system embodying the Asserted Patents, including the '174 Patent, is shown below:



18.     The '095 and '969 Patents are directed to nasal adhesives that attach to the user's nose and interact and cooperate with a breathing system apparatus.  A representative picture of Plaintiff's nasal adhesive product embodying the '095 and '969 Patents is shown below:



19.     Plaintiff's patented nasal adhesives are used as part of Plaintiff's innovative nasal dilator system, which includes at least the nasal adhesives, a magnetic band, and an applicator to apply the nasal adhesives.

20.     The patented nasal dilator technology in the Asserted Patents was invented by James D. Castillo, a prolific inventor and motorsports enthusiast who holds multiple patents across various

fields. The idea for the nasal dilator system was first conceived during a motorcycle excursion. While wearing goggles, Mr. Castillo experienced discomfort and difficulty breathing due to the pressure on his nose.  This experience prompted him to improvise a device that would keep the nostrils open—even under pressure—leading to the initial development of the technology.

21.    The concept resurfaced during a family gathering, where Mr. Castillo realized that this innovation could have a broader application for athletes of all kinds and for people struggling with nasal breathing in everyday life. What started as a solution for a breathing problem in motor-sports evolved into a novel and widely useful device. That idea became a reality through years of design, development, and refinement, ultimately resulting in the patented technology at issue in this case.

22.    Plaintiff's product line embodying the Asserted Patents and displaying Plaintiff's distinctive trade dress under the brand name "Intake®" ("Plaintiff's Products") are sold exclusively under the Intake brand by Plaintiff and its distributor, including through Intake's website (www.intakebreathing.com) and by Plaintiff on e-commerce platforms such as Amazon.com and TikTok.

23.    Plaintiff's Products have been hugely successful and after being used and worn by many professional athletes, including in televised interviews, Plaintiff's Products went viral on social media, including on TikTok.

24.    Plaintiff has developed and owns common law trade dress rights in the distinctive overall commercial image and appearance of its nasal dilatory products, including its nasal dilatory system as a whole as well as the magnetic nasal band (marketed as the "Relief Band"), magnetic applicator, and nasal adhesive tabs which make up the system's components parts, all of which are pictured below:






25.     Each of these product components and products constitutes a separate and independently protectable trade dress.

26.     The Relief Band trade dress consists of the total image and overall appearance of Intake's magnetic nasal band, including at least the following distinctive, non-functional, ornamental elements: signature color options, specific aesthetic contours, curves, and proportions of the band, the ornamental finish and texture, and the overall visual impression created by the combination of these elements.

27.     The Relief Band trade dress has acquired secondary meaning and distinctiveness through Intake's continuous, exclusive, and substantially widespread use in interstate commerce since at least 2019.

28.     In the minds of consumers, the Relief Band trade dress has come to identify Intake as the single source of origin of products bearing this trade dress. This secondary meaning has been established through: (a) Intake's continuous and exclusive use of the Relief Band trade dress for approximately seven years; (b) Intake's substantial expenditures on advertising and promotional efforts featuring the Relief Band trade dress; (c) Intake's sales of over one million units to consumers throughout the United States; (d) unsolicited media coverage and consumer reviews recognizing the distinctive appearance of the Relief Band; and (e) consumer association of the Relief Band trade dress with Intake as the source of the product.

29.     The Relief Band trade dress is non-functional.

30.     Alternative designs exist that would permit competitors to manufacture rigid, magnetic, nasal bands without copying the distinctive overall appearance of Intake's Relief Band.

31.     The magnetic applicator trade dress consists of the total image and overall appearance of Intake's applicator device, including at least the following distinctive, non-functional, ornamental elements: the specific aesthetic shape, contours, and configuration of the applicator; the color and ornamental surface finish; the coordinated visual design with Intake's travel case; and the overall visual impression created by the combination of these elements.

32.     The magnetic applicator trade dress has acquired secondary meaning and distinctiveness through Intake's continuous, exclusive, and substantially widespread use in interstate commerce since at least 2019.

33.     In the minds of consumers, the magnetic applicator trade dress has come to identify Intake as the single source of origin of products bearing this trade dress. This secondary meaning has been established through: (a) Intake's continuous and exclusive use of the magnetic applicator trade dress for approximately seven years; (b) Intake's substantial expenditures on advertising and promotional efforts featuring the magnetic applicator trade dress; (c) Intake's sales of over one million

units to consumers throughout the United States; (d) unsolicited media coverage and consumer reviews recognizing the distinctive appearance of the magnetic applicator; and (e) consumer association of the magnetic applicator trade dress with Intake as the source of the product.

34.     The magnetic applicator trade dress is non-functional.

35.     Alternative designs exist that would permit competitors to manufacture applicator devices without copying the distinctive overall appearance of Intake's magnetic applicator.

36.     The nasal adhesive tab trade dress consists of the total image and overall appearance of Intake's adhesive tabs, including the following distinctive, non-functional, ornamental elements: the specific aesthetic shape and outline of the tabs; the particular visual appearance created by the surface texture and ornamental color; the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these elements.

37.     The nasal adhesive tab trade dress has acquired secondary meaning and distinctiveness through Intake's continuous, exclusive, and substantially widespread use in interstate commerce since at least 2019. In the minds of consumers, the nasal adhesive tab trade dress has come to identify Intake as the single source of origin of products bearing this trade dress. This secondary meaning has been established through: (a) Intake's continuous and exclusive use of the nasal adhesive tab trade dress for approximately seven years; (b) Intake's substantial expenditures on advertising and promotional efforts featuring the nasal adhesive tab trade dress; (c) Intake's sales of over one million units to consumers throughout the United States; (d) unsolicited media coverage and consumer reviews recognizing the distinctive appearance of the nasal adhesive tabs; and (e) consumer association of the nasal adhesive tab trade dress with Intake as the source of the product.

38.     The nasal adhesive tab trade dress is non-functional.

39.     Alternative designs exist that would permit competitors to manufacture nasal adhesive tabs without copying the distinctive overall appearance of Intake's nasal adhesive tabs.

40.   In addition to the independently protectable trade dress of each component, Intake also owns common law trade dress rights in the overall presentation of its integrated nasal dilator system, including the distinctive packaging and unified product offering.

41.   The overall product system trade dress has acquired secondary meaning and distinctiveness through Intake's continuous, exclusive, and substantially widespread use in interstate commerce since at least 2019.

42.   In the minds of consumers, the overall product system trade dress has come to identify Intake as the single source of origin of products bearing this trade dress. This secondary meaning has been established through: (a) Intake's continuous and exclusive use of the overall product system trade dress for approximately seven years; (b) Intake's substantial expenditures on advertising and promotional efforts featuring the overall product system trade dress; (c) Intake's sales of over one million units to consumers throughout the United States; (d) unsolicited media coverage and consumer reviews recognizing the distinctive appearance of the overall product system; and (e) consumer association of the overall product system trade dress with Intake as the source of the product.

43.   The overall product system trade dress is non-functional.

44.   Through Intake's extensive marketing efforts, consistent product presentation, and service to over one million customers, consumers encountering products displaying any of the foregoing trade dress immediately identify such products as originating from Intake.

45.   Intake possesses valid and enforceable common law trade dress rights in each of the foregoing trade dress elements.

46.   Plaintiff is also the owner of all rights in the copyrights for its images related to its nasal dilator system, including, but not limited to, images of related product components, packaging, and models demonstrating the use of its products.

47.     On January 2, 2025, the Copyright Reg. No. VAu 1-542-204 (the "'204 Registration"), entitled "Intake Breathing System", was duly and legally issued by the United States Copyright Office. A copy of the '204 Registration is attached as **Exhibit 5**.

48.     The '204 Registration covers a group of Plaintiff's copyrighted photographs of its nasal dilator system and product packaging associated with the system, including the two registered images below:



49.     The '204 Registration also includes photographs with models displaying how to wear and use the nasal dilator system, such as the registered photographs below:



50.     The '204 Registration also includes photographs with models displaying sleep quality while using the nasal dilator system, such as the registered photograph below:



51.     Plaintiff also holds all right, title, and interest in and to U.S. Trademark Reg. No. 5,752,925 (the "'925 Registration") for the mark INTAKE in standard characters (the "INTAKE Mark"), a true and correct copy of which Registration is attached as **Exhibit 6**.

52.     The '925 Registration was duly and lawfully issued by the United States Patent and Trademark Office on May 14, 2019 for the INTAKE Mark in international class 10 in connection with nasal dilation devices.

53.    On November 21, 2019, the '925 Registration was duly and legally assigned to Plaintiff.

54.    The '925 Registration is valid and subsisting, and is *prima facie* evidence of Intake's exclusive right to use the INTAKE Mark in commerce in connection with the goods listed in the Registration, along with any related goods. The '925 Registration is incontestable under 15 U.S.C. § 1065 and 15 U.S.C. § 1115(b), as Intake filed the required Section 15 affidavit on June 6, 2024.

55.    The INTAKE Mark has been in use in the United States in connection with nasal dilation devices since at least as early as December 3, 2018.

56.    Plaintiff also holds all right, title, and interest in and to U.S. Trademark Reg. No. 7,427,018 (the "'018 Registration") for the mark LIFE CHANGING BREATHING in standard characters (the "LIFE CHANGING BREATHING Mark"), a true and correct copy of which Registration is attached as **Exhibit 7**.

57.    Intake holds all right, title, and interest in and to the '018 Registration. The '018 Registration is valid and subsisting. The '018 Registration is *prima facie* evidence of Intake's exclusive right to use the LIFE CHANGING BREATHING Mark in commerce in connection with the goods listed in the Registration, along with any related goods.

58.    The LIFE CHANGING BREATHING Mark has been in use in the United States in connection with nasal dilation devices since at least as early as October 28, 2022.

59.    Defendant is not licensed under the Asserted Patents or any other Intake patents and is not authorized to practice the inventions claimed therein.

60.    Defendant is not authorized to use, copy, or mimic Plaintiff's trade dress nor any confusingly similar variation thereof.

61.    Defendant is not authorized to use, reproduce, copy, display, or distribute Plaintiff's copyrighted images of its products, packaging, and models demonstrating the use of the products, nor any derivative thereof.

62.    Defendant is not authorized to use any of Plaintiff's trademarks.

**B.    Defendant's Unlawful Conduct**

63.    Defendant makes, uses, offers for sale, sells, and/or imports into the United States the Accused Products in this action.

64.    The viral success of Plaintiff's Products has resulted in significant and exponential infringement of Plaintiff's Patent. Due to the growing popularity and demand for Plaintiff's highly-effective and high-quality patented nasal dilator technology, opportunistic sellers including Defendant have entered the market with infringing products that attempt to mimic Plaintiff's products and that infringe on its patents. Because of this ongoing infringement, Plaintiff is currently losing sales in at least the six-figure range on a monthly basis, severely affecting its ability to capitalize on its own innovation and recover its investment in product development and marketing.

65.    Defendant has previously and is currently making, using, selling, advertising, offering for sale, and/or importing into the United States a nasal dilator system including nasal adhesives, and individually sold nasal adhesives, that imitate Plaintiff's genuine products, infringe the Asserted Patents, and infringe on Plaintiff's copyrighted images.  Defendant has previously offered and is currently offering the Accused Products for sale via at least the following webpages:

- https://gentavia.com/products/gentavia%E2%84%A2-breathing-breeze-1;

- https://gentavia.com/products/gentavia%E2%84%A2-breathing-breeze-1?variant=46448857219212;

- https://gentavia.com/products/gentavia%E2%84%A2-nose-strips-patch-1;

- https://gentavia.com/products/gentavia%E2%84%A2-nose-strips-patch-1?variant=46215231930508;

- https://gentavia.com/products/gentavia%E2%84%A2-nose-stripspatch?variant=45946531315852;

- https://sejjcg-vw.myshopify.com /;

- https://shop.app/products/8937556836492/gentavia-nose-strips-patch; and

- https://shop.app/products/9007666790540/gentavia-breathing-breeze,

A representative picture of the Accused Products, as advertised on Defendant's website and in Defendant's listings is shown below, taken from the true and correct representative webcaptures of Defendant's websites attached as **Exhibit 8**.



66.    The Accused Products meet multiple claims of the Asserted Patents.

67.    Publicly available materials, including the product itself and Defendant's advertising, confirm that the Accused Products practice the claimed elements of the Asserted Patents.

68.    Specifically, Plaintiff's claim charts show that the Accused Products infringe at least claim 1 of the '174 Patent, at least claim 1 of the '095 Patent, and at least claim 1 of the '969 Patent. The representative claim charts are attached as **Exhibits 9–11**.

69.    The unauthorized manufacture, use, sale, offer to sell, and importing into the United States of the Accused Products constitutes infringement under 35 U.S.C. § 271(a) and (c).

70.    Defendant has had notice of the Asserted Patents and that the Accused Products infringe the Asserted Patents since at least the filing of this Complaint.

71.    On information and belief, Defendant is willfully infringing Plaintiff's patents and knowingly seeking to trade off the success of Plaintiff's inventions without Plaintiff's authorization.

72.    Defendant's products also imitate Plaintiff's trade dress in its nasal dilator system and products, creating a likelihood that consumers will be confused into believing Defendant's products are offered by Plaintiff or otherwise associated or affiliated with Plaintiff.

73.    The Accused Products convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilatory system and each of its component parts including because the Accused Products use the total image and overall appearance of Plaintiff's magnetic nasal band, including at least its signature color options, specific aesthetic contours, curves, and proportions of the band, the ornamental finish and texture, and the overall visual impression created by the combination of those elements.

74.    The Accused Products also convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilatory system and each of its component parts because the Accused Products use the specific aesthetic shape, contours, and configuration of Plaintiff's applicator, as well as the color and ornamental surface finish, the coordinated visual design with Intake's travel case, and the overall visual impression created by the combination of these elements.

75.    The Accused Products convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilatory system and each of its component parts including because the Accused Products use images of nasal tabs that use the specific aesthetic shape and outline of Plaintiff's tabs; the particular visual appearance created by the surface texture and ornamental color;

16

the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these elements.

76.    For example, a comparison of the Accused Products with Plaintiff's genuine products demonstrates Defendant's infringement of Plaintiff's trade dress in the overall commercial image and appearance of Plaintiff's nasal dilatory products and each of its component parts:

| Infringing Gentavia Knockoff | Intake's Authentic Product |
|---|---|
|  |  |

| Infringing Gentavia Knockoff | Intake's Authentic Product |
|---|---|



Breath Tabs

| Infringing Gentavia Knockoff | Intake's Authentic Product |
|---|---|



77.    On information and belief, in a deliberate effort to benefit from Plaintiff's reputation and trade on the valuable common law rights, goodwill, and consumer trust and recognition established by Intake's trade dress, Defendant has blatantly infringed the same with its ornamental design of the Accused Products as well as by advertising the Accused Products using images of products that use Plaintiff's trade dress.

78.     Defendant also advertises the Accused Products using images that infringe on Plaintiff's copyrighted images, including at least the images below, exactly and/or as infringing derivative works:

| Gentavia Infringing Image | Intake Copyrighted Image |
|---|---|



| Gentavia Infringing Image | Intake Copyrighted Image |
|---|---|
|  |  |
|  |  |



### Guaranteed To Stay On With Patented Technology









| **Gentavia Infringing Image** | **Intake Copyrighted Image** |
|---|---|






79.    Defendant has used and continues to use, without authorization, the INTAKE Mark and LIFE CHANGING BREATHING Mark, including but not limited to in advertisements such as on its product packaging, as depicted below:



80.    The Accused Products are identical and/or legally identical to Plaintiff's product because, *inter alia*, they are both nasal dilation systems.

81.    The channels of trade used by Intake and Defendant are the same and at a minimum overlapping. For example, both Intake and Defendant offer Intake-branded products on publicly-available webpages.

82.    Defendant is not authorized to use any of Plaintiff's intellectual property, including Plaintiff's patents, trade dress, or copyrighted images.

## COUNT I

### PATENT INFRINGEMENT (35 U.S.C. § 271) – THE '174 PATENT

83.    Plaintiff repeats, re-alleges and incorporates by reference each of the allegations in the preceding paragraphs as if fully set forth herein.

84.    Plaintiff is the exclusive owner of all rights, title, and interest in and to the '174 Patent, titled "Breathing System," duly and legally issued by the United States Patent and Trademark Office on June 9, 2020, including the right to bring this suit for injunctive relief and damages.  A true and correct copy of the '174 Patent is attached hereto as **Exhibit 2.**

85.    The '174 Patent is valid and enforceable.

86.    Defendant makes, uses, offers for sale, sells, and/or imports the Accused Product that directly infringe, whether literally or under the doctrine of equivalents, one or more claims of the '174 Patent, including at least representative claim 1.

87.    The Accused Products satisfy all claim limitations of at least one claim of the '174 Patent. A claim chart comparing representative claim 1 of the '174 Patent to a representative sample of the Accused Products is attached as **Exhibit 9**. This showing of infringement is based on publicly available information, and Plaintiff reserves the right to identify additional infringing activities and products, including, for example, on the basis of information obtained during discovery.

88.    Defendant is not licensed or otherwise authorized by Plaintiff to practice the claims of the '174 Patent.

89.    By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured and irreparably harmed Plaintiff and is liable for infringement of the '174 Patent pursuant to 35 U.S.C. § 271(a).

90.    Defendant has actual knowledge of the '174 Patent and that the Accused Products infringe the '174 Patent since at least the filing of this Complaint.

91.     Defendant has profited from its sales of the Accused Products and its infringement of the '174 Patent.

92.     As a direct and proximate cause of Defendant's infringing activities, Plaintiff has suffered and will continue to suffer substantial damages in an amount to be proven at trial. Plaintiff is entitled monetary judgment pursuant to 35 U.S.C. §§ 154(d) and 284 in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and Plaintiff will continue to suffer damages in the future unless Defendant's infringing activities are immediately enjoined.

93.     Defendant's manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Products since at least the filing of this Complaint constitutes willful infringement entitling Plaintiff to treble damages under 35 U.S.C. § 284.

94.     Defendant's infringement of the '174 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II

## PATENT INFRINGEMENT (35 U.S.C. § 271) – THE '095 PATENT

95.     Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1–82 as if separately repeated herein.

96.     Plaintiff is the exclusive owner of all rights, title, and interest in and to the '095 Patent, titled "Google Breathing Set," duly and legally issued by the United States Patent and Trademark Office on February 11, 2020, including the right to bring this suit for injunctive relief and damages. A true and correct copy of the '095 Patent is attached hereto as **Exhibit 3**.

97.     The '095 Patent is valid and enforceable.

26

98.    Defendant makes, uses, offers for sale, sells, and/or imports the Accused Products that directly infringe, whether literally or under the doctrine of equivalents, one or more claims of the '095 Patent, including at least representative claim 1.

99.    The Accused Products satisfy all claim limitations of at least one claim of the '095 Patent. A claim chart comparing representative claim 1 of the '095 Patent to a representative sample of the Accused Products is attached as **Exhibit 10**. This showing of infringement is based on publicly available information, and Plaintiff reserves the right to identify additional infringing activities and products, including, for example, on the basis of information obtained during discovery.

100.    Defendant is not licensed or otherwise authorized by Plaintiff to practice the claims of the '095 Patent.

101.    By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured and irreparably harmed Plaintiff and is liable for infringement of the '095 Patent pursuant to 35 U.S.C. § 271.

102.    Defendant has actual knowledge of the '095 Patent and that the Accused Products infringe the '095 Patent since at least the filing of this Complaint.

103.    Defendant has profited from its sales of the Accused Products and its infringement of the '095 Patent.

104.    As a direct and proximate cause of Defendant's infringing activities, Plaintiff has suffered and will continue to suffer substantial damages in an amount to be proven at trial. Plaintiff is entitled monetary judgment pursuant to 35 U.S.C. §§ 154(d) and 284 in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and Plaintiff will continue to suffer damages in the future unless Defendant's infringing activities are immediately enjoined.

105. Defendant's manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Products since at least after the filing of this Complaint constitutes willful infringement entitling Plaintiff to treble damages under 35 U.S.C. § 284.

106. Defendant's continuing acts of infringement have caused and will continue to cause Plaintiff irreparable harm, for which Plaintiff has no adequate remedy at law, unless Defendant's continuing acts of infringement are enjoined by the Court under 35 U.S.C. § 283. The hardships that an injunction would impose are less than those faced by Plaintiff should an injunction not issue. The public interest would be served by issuance of an injunction.

107. Defendant's infringement of the '095 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT III

### PATENT INFRINGEMENT (35 U.S.C. § 271) – THE '969 PATENT

108. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1–82 as if separately repeated herein.

109. Plaintiff is the exclusive owner of all rights, title, and interest in and to the '969 Patent, titled "Nasal Element For A Breathing System," duly and legally issued by the United States Patent and Trademark Office on December 6, 2016, including the right to bring this suit for injunctive relief and damages. A true and correct copy of the '969 Patent is attached hereto as **Exhibit 4**.

110. The '969 Patent is valid and enforceable.

111. Defendant makes, uses, offers for sale, sells, and/or imports the Accused Product that directly infringes, whether literally or under the doctrine of equivalents, one or more claims of the '969 Patent, including at least representative claim 1.

112. The Accused Products satisfy all claim limitations of at least one claim of the '969 Patent. A claim chart comparing representative claim 1 of the '969 Patent to a representative sample

of the Accused Products is attached as **Exhibit 11**. This showing of infringement is based on publicly available information, and Plaintiff reserves the right to identify additional infringing activities and products, including, for example, on the basis of information obtained during discovery.

113.    Defendant is not licensed or otherwise authorized by Plaintiff to practice the claims of the '969 Patent.

114.    By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured and irreparably harmed Plaintiff and is liable for infringement of the '969 Patent pursuant to 35 U.S.C. § 271.

115.    Defendant has actual knowledge of the '969 Patent and that the Accused Products infringe the '969 Patent since at least the filing of this Complaint.

116.    Defendant has profited from its sales of the Accused Products and its infringement of the '969 Patent.

117.    As a direct and proximate cause of Defendant's infringing activities, Plaintiff has suffered and will continue to suffer substantial damages in an amount to be proven at trial. Plaintiff is entitled monetary judgment pursuant to 35 U.S.C. §§ 154(d) and 284 in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and Plaintiff will continue to suffer damages in the future unless Defendant's infringing activities are immediately enjoined.

118.    Defendant's manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Products since at least after the filing of this Complaint constitutes willful infringement entitling Plaintiff to treble damages under 35 U.S.C. § 284.

119.    Defendant's continuing acts of infringement have caused and will continue to cause Plaintiff irreparable harm, for which Plaintiff has no adequate remedy at law, unless Defendant's continuing acts of infringement are enjoined by the Court under 35 U.S.C. § 283. The hardships that

an injunction would impose are less than those faced by Plaintiff should an injunction not issue. The public interest would be served by issuance of an injunction.

120.    Defendant's infringement of the '969 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT IV

## TRADE DRESS INFRINGEMENT (COMMON LAW)

121.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1–82 as if separately repeated herein.

122.    Plaintiff owns trade dress rights in its nasal dilatory system and each of its component parts.

123.    Plaintiff's trade dress consists of (1) the total image and overall appearance of Intake's magnetic nasal band, including at least the following distinctive, non-functional, ornamental elements: signature color options, specific aesthetic contours, curves, and proportions of the band, the ornamental finish and texture, and the overall visual impression created by the combination of these elements; (2) the total image and overall appearance of Intake's applicator device, including at least the following distinctive, non-functional, ornamental elements: the specific aesthetic shape, contours, and configuration of the applicator; the color and ornamental surface finish; the coordinated visual design with Intake's travel case; and the overall visual impression created by the combination of these elements; and (3) the total image and overall appearance of Intake's adhesive tabs, including the following distinctive, non-functional, ornamental elements: the specific aesthetic shape and outline of the tabs; the particular visual appearance created by the surface texture and ornamental color; the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these elements; including each of these sets of features together in Plaintiff's dilatory nasal system as well as individually as its component parts.

30

124.    Plaintiff's trade dresses are non-functional and do not yield any utilitarian advantage.

125.    Numerous alternative designs are available that would permit competitors to manufacture and sell non-infringing nasal dilation systems, nasal dilator products, applicators, and adhesive tabs without copying Intake's distinctive trade dress. For example, competitors could employ different aesthetic shapes, outlines, contours, curves, configurations, proportions, colors, ornamental surface finishes, ornamental textures, and visual designs that differ from Intake's unique, signature ornamental designs. The availability of these alternative designs demonstrates that Intake's trade dress elements are not competitively necessary and that competitors could effectively compete in the nasal dilator market without imitating Intake's distinctive product appearance.

126.    Plaintiff's trade dresses have secondary meaning; and Plaintiff is the originator of the unique design for its nasal dilator system and its component parts.

127.    Plaintiff has been advertising and selling its patented nasal dilator system since at least 2019 as a unique and original creation.

128.    Defendant's public display, advertising, promoting, offering for sale, and sale of the Accused Products is likely to cause confusion in the marketplace as to the source of the product.

129.    Plaintiff's trade dress is strong, unique, and has secondary meaning. Defendant's Accused Products are substantially similar to Plaintiff's trade dress in terms of overall image and appearance—the designs, shape, and overall visual impression are identical.

130.    Specifically, the Accused Products convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilatory system and each of its component parts at least because Defendant's nasal strips use the total image and overall appearance of Plaintiff's magnetic nasal band, including at least its signature color options, specific aesthetic contours, curves, and proportions of the band, the ornamental finish and texture, and the overall visual impression created by the combination of those elements.

131.    The Accused Products convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilatory system and each of its component parts at least because Defendant's applicator uses the specific aesthetic shape, contours, and configuration of Plaintiff's applicator, as well as the color and ornamental surface finish, the coordinated visual design with Intake's travel case, and the overall visual impression created by the combination of these elements.

132.    The Accused Products convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilatory system and each of its component parts at least because Defendant's advertisements use images of nasal tabs that use the specific aesthetic shape and outline of Plaintiff's tabs; the particular visual appearance created by the surface texture and ornamental color; the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these elements.

133.    The Accused Products and Plaintiff's Products are both nasal dilator systems which have been presented to customers in the same channels of trade, namely, via e-commerce. On information and belief, the goods travel in the same marketing channels, including on social media.

134.    Defendant's advertising, promoting, offering for sale, and sale of the Accused Products infringes upon Intake's trade dress in violation of Delaware common law.

135.    As a direct and proximate result of Defendant's trade dress infringement, Defendant has caused, is causing, and unless immediately enjoined by this Court, will continue to cause immediate and irreparable harm to Intake, for which there is no adequate remedy at law, and for which Intake is entitled to injunctive relief.

136.    As a direct and proximate result of Defendant's infringement of Intake's trade dress, Intake has been damaged in an amount to be proven at trial and is entitled to collect damages from Defendant.

## COUNT V

## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)

137.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1–82 as if separately repeated herein.

138.    Intake is the sole owner of its registered copyrights covering images of Intake's nasal dilator system, its packaging, and models demonstrating how to wear and use the system, including but not limited to the photographs registered in the '204 Registration.

139.    By Defendant's unauthorized copying, display, reproduction, distribution, modification, and use of the copyrighted images to solicit sales and promote its business and reputation, Defendant has willfully infringed Plaintiff's copyright registration by copying, reproducing, creating derivative works of, displaying, and/or distributing Plaintiff's copyrighted works, all without Plaintiff's permission or authorization.

140.    Defendant knew or should have known of Plaintiff's rights in the copyrighted images since Defendant's first infringing conduct and has willfully and intentionally infringed Intake's exclusive rights in the copyrighted images under 17 U.S.C. § 106.

141.    As a result of their wrongful conduct, Defendant is liable to Plaintiff for copyright infringement under 17 U.S.C. § 501.

142.    As a direct and proximate result of the copyright infringement detailed herein, Plaintiff has incurred and continues to incur damages in an amount unknown at present and to be determined at trial. Plaintiff is also entitled to any profits of Defendant attributable to the infringement and not taken into account in computing actual damages.

143.    In the alternative and at its election, Plaintiff is entitled to seek statutory damages for Defendant's willful acts of infringement in an amount of up to $150,000 per infringement.

144.    Plaintiff Intake has suffered and continues to suffer irreparable injury from Defendant's conduct, and Plaintiff has no adequate remedy at law to protect its rights in its copyrighted images and to prevent Defendant from continuing its infringement and continuing the resulting injury to Plaintiff.

145.    As a direct and proximate result of the copyright infringement detailed herein, Plaintiff is entitled to preliminary and permanent injunctive relief enjoining and restraining Defendant from infringing its copyrighted images.

## COUNT VI

### TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

146.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1–82 as if separately repeated herein.

147.    Defendant's actions constitute trademark infringement under 15 U.S.C. § 1114.

148.    Intake holds all right, title, and interest in and to the '925 Registration. The '925 Registration is valid and subsisting and is incontestable under 15 U.S.C. § 1065 and 15 U.S.C. § 1115(b). The '925 Registration is *prima facie* evidence of Intake's exclusive right to use the INTAKE Mark in commerce in connection with the goods listed in the Registration, along with any related goods.

149.    Intake holds all right, title, and interest in and to the '018 Registration. The '018 Registration is valid and subsisting. The '018 Registration is *prima facie* evidence of Intake's exclusive right to use the LIFE CHANGING BREATHING Mark in commerce in connection with the goods listed in the Registration, along with any related goods.

150.    The INTAKE Mark has been continuously used to market and sell nasal dilator systems since at least as early as 2018. The INTAKE Mark is inherently distinctive and has acquired secondary meaning.

151.    The LIFE CHANGING BREATHING Mark has been continuously used to market and sell nasal dilator systems since at least as early as 2022. The LIFE CHANGING BREATHING Mark has acquired secondary meaning.

152.    Defendant has used, and continues to use, without authorization, the INTAKE Mark and LIFE CHANGING BREATHING Mark, including but not limited to uses in advertising such as on its product packaging.

153.    Because of Defendant's unauthorized use of the INTAKE Mark and LIFE CHANGING BREATHING Mark, Intake's customers, and consumers in general, are likely to mistakenly believe Defendant's goods originate from and/or are affiliated with Intake.

154.    Accordingly, Defendant's use of the INTAKE Mark and LIFE CHANGING BREATHING Mark has caused and/or is likely to cause consumers to mistakenly believe Defendant's products originate from, are sponsored by, and/or are affiliated with Intake, constituting trademark infringement.

155.    Upon information and belief, Defendant's infringement is intentional, willful, and/or in reckless disregard of Intake's trademark rights in its INTAKE Mark and LIFE CHANGING BREATHING Mark.

156.    By infringing the INTAKE Mark and LIFE CHANGING BREATHING Mark, Defendant has caused Intake to suffer and, unless enjoined by this Court, will cause Intake to continue to suffer substantial injury, including, but not limited to, lost profits, for which Intake is entitled to all available damages to compensate Intake for Defendant's infringement.

157.    If Defendant's infringement is not enjoined, Intake will suffer irreparable harm that cannot adequately be compensated by a monetary reward.

## COUNT VII

## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION

## (15 U.S.C. § 1125)

158.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1–82 as if separately repeated herein.

159.    Defendant's actions constitute false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1125.

160.    Plaintiff owns all right, title, and interest in and to the '925 Registration. The '925 Registration is valid and subsisting and is incontestable under 15 U.S.C. § 1065 and 15 U.S.C. § 1115(b). The '925 Registration is *prima facie* evidence of Intake's exclusive right to use the INTAKE Mark in commerce in connection with the goods listed in the Registration, along with any related goods.

161.    Intake holds all right, title, and interest in and to the '018 Registration. The '018 Registration is valid and subsisting. The '018 Registration is *prima facie* evidence of Intake's exclusive right to use the LIFE CHANGING BREATHING Mark in commerce in connection with the goods listed in the Registration, along with any related goods.

162.    Defendant is not authorized to use the INTAKE Mark or LIFE CHANGING BREATHING Mark, any variation thereof, or any mark confusingly similar to the INTAKE Mark or LIFE CHANGING BREATHING Mark.

163.    Defendant has used, and continues to use, without authorization, the INTAKE Mark and LIFE CHANGING BREATHING Mark, including but not limited to uses in advertising such as on its product packaging.

164.    Defendant has used, and continues to use, without authorization, the INTAKE Mark and LIFE CHANGING BREATHING Mark, to sell or offer for sale products that unfairly compete

with Plaintiff's legitimate nasal dilation system products, including products that infringe Plaintiff's intellectual property rights.

165.    Consumers purchase Defendant's products believing they are purchasing legitimate Intake products, or products that originate from, are associated with, or are connected with Plaintiff, or otherwise have the sponsorship, endorsement, or approval of Plaintiff.

166.    Defendant therefore uses Plaintiff's trademark to unfairly compete with Plaintiff and/or redirect sales to Defendant for infringing products that would have otherwise been directed to Plaintiff.

167.    Defendant's false designation of origin and unfair competition is intentional, willful, and/or in reckless disregard for Plaintiff's rights.

168.    By infringing the INTAKE Mark and LIFE CHANGING BREATHING Mark, and as a direct and proximate cause of Defendant's wrongful actions, Defendant has caused Plaintiff Intake to suffer and, unless enjoined by this Court, will cause Plaintiff to continue to suffer substantial injury, including, but not limited to, lost profits, for which Plaintiff is entitled to all available damages to compensate Plaintiff for Defendant's wrongful actions.

169.    If Defendant's infringement and violation of Plaintiff's rights is not enjoined, Intake will suffer irreparable harm that cannot adequately be compensated by a monetary reward.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant on the claims set forth above and respectfully requests that this Court:

A.    Enter judgment against Defendant finding that Defendant (i) has directly infringed, literally or under the doctrine of equivalents, one or more claims of the Asserted Patents, (ii) has infringed Plaintiff's trade dress rights in violation of common law trade dress rights, (iii) has violated Plaintiff's copyrights through its unauthorized use of Plaintiff's copyrighted images; (iv) has infringed Intake's INTAKE Mark and LIFE CHANGING BREATHING Mark in violation of 15 U.S.C. § 1114;

and (v) has committed acts of false designation or origin and unfair competition in violation of Intake's rights;

B.     Enter judgment against Defendant finding that Defendant has willfully infringed one or more claims of the Asserted Patents, Plaintiff's common law trade dress rights, Plaintiff's copyrights, Plaintiff's INTAKE Mark and LIFE CHANGING BREATHING Mark, and that Defendant's false designation of origin and unfair competition have also been willful;

C.     Temporarily, preliminarily, and permanently enjoin Defendant, its affiliates, officers, agents, employees, assigns, representatives, and all persons acting for, with, by, through, under, or in active concert with Defendant:

      a.   from making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use any products that infringe upon the Asserted Patents, including the Accused Products;

      b.   from any further acts of trade dress infringement, including selling or advertising the Accused Products;

      c.   from any further acts of copyright infringement;

      d.   from any further acts of trademark infringement; and

      e.   from any further acts of unfair competition;

D.     Award Plaintiff all available and legally permissible damages and relief adequate to compensate Plaintiff for Defendant's patent infringement that occurred pursuant to 35 U.S.C. § 284 to the full extent permitted, an award of Plaintiff's profits from its patent infringement pursuant to 35 U.S.C. § 289, together with prejudgment interest and costs and reasonable attorneys' fees, pursuant to 35 U.S.C. §§ 284 and 285 and all other applicable statutes and rules in common law as may apply;

E.      Award Plaintiff its actual damages resulting from Defendant's trade dress and trademark infringement, and for its false designation of origin and unfair competition, including as appropriate pursuant to 15 U.S.C. §§1125 and 1117.

F.      Award Plaintiff any profits that Defendant derived from its patent infringement, trade dress infringement, trademark infringement, false designation of origin and unfair competition, including as appropriate pursuant to 15 U.S.C. §§ 1125 and 1117;

G.      Award Plaintiff all additional available and legally permissible damages and relief adequate to compensate Plaintiff for Defendant's trademark and trade dress infringement including corrective advertising damages, costs and reasonable attorneys' fees under 15 U.S.C. §§ 1125 and 1117;

H.      Award Plaintiff statutory damages in the amount of $150,000 per infringing work for Defendant's copyright infringement in an amount to be determined at trial, to be increased to the maximum permitted by law, for Defendant's acts of willful infringement pursuant to 17 U.S.C. § 504(c);

I.      Award Plaintiff its actual damages, direct and indirect, for Defendant's copyright infringement in an amount to be determined at trial, to be increased to the maximum permitted by law, for Defendant's acts of willful infringement;

J.      Award Plaintiff supplemental damages or profits for any prejudgment interest and post-judgment interest, continuing post-verdict infringement up until entry of the final judgment, with an accounting as needed;

K.      Declare Defendant's patent infringement willful and order an enhancement of damages up to three times during the period of willful infringement;

L.      Declare this to be an exceptional case under 35 U.S.C. § 285 and award Plaintiff its reasonable attorneys' fees, costs, and expenses incurred in connection with this action under 35 U.S.C. § 285 and all other applicable statutes and rules in common law as may apply;

M.      Award Plaintiff its costs, including attorneys' fees, and an assessment of interest, for Defendant's copyright infringement;

N.      Award Plaintiff its costs and expenses incurred in bringing and prosecuting this action pursuant to 35 U.S.C. § 284, Rule 54(d) of the Federal Rules of Civil Procedure, and all other applicable statutes and rules in the common law as may apply; and

O.      Award Plaintiff any and all other relief that this Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b) and D. Del. LR 38.1, Plaintiff hereby demands a trial by jury on all issues so triable by a jury as of right in this action.

Dated: March 10, 2026.

OF COUNSEL:

Dawn M. David (*pro hac vice forthcoming*)
QUARLES & BRADY LLP
411 E Wisconsin Ave., Suite 2400
Milwaukee, WI 53202
(414) 277-5000
dawn.david@quarles.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com

*Attorneys for Plaintiff*
*Intake Breathing Technology, LLC*